UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GENERAL MILLS INC.,**

   **Plaintiff,**         Case No. 2:06-cv-315
                     **JUDGE GREGORY L. FROST**
   v.              **Magistrate Judge Abel**

**LIBERTY INSURANCE UNDERWRITERS INC.,**

   **Defendant.**

## OPINION & ORDER

   This matter comes before the Court for a Motion for Partial Summary Judgment (Doc. # 30) filed by Plaintiff General Mills Inc. ("Plaintiff"), a memorandum in opposition (Doc. # 33) filed by Defendant Liberty Insurance Underwriters Inc. ("Defendant"), and a reply.  (Doc. # 34.)  Also before the Court is Defendant's Motion for Summary Judgment (Doc. # 31), a memorandum in opposition ("Doc. # 32), and a reply.  (Doc. # 35.)  For the reasons that follow, the Court grants Plaintiff's Motion (Doc. # 30), and denies Defendant's motion.  (Doc. # 31.)

### A. Findings of Fact

   Plaintiff is a corporation engaged in the business of manufacturing and marketing food products throughout the world.  It owns and operates a manufacturing facility in Wellston, Ohio.  Defendant is a corporation with its principal place of business in New York, New York.  Defendant is engaged in the business of selling insurance policies and is licensed to transact insurance business in the State of Ohio.  Liberty Insurance Corporation insured Plaintiff for employers' liability on a first-level basis.  Additionally, Defendant provided umbrella excess insurance to Plaintiff.

This action arises out of a severe bodily injury to Plaintiff's employee, Anthony Smith ("Smith"), at its Wellston, Ohio plant. Smith and his family initiated an action in this Court against Plaintiff alleging a substantial certainty intentional tort. Following discovery, Plaintiff settled the Smiths' claims for an amount in excess of its first-level policy of liability insurance that provided coverage for employers' liability. The parties do not dispute that the provisions of the first-level policy provided coverage for substantial certainty intentional torts. Accordingly, Liberty Insurance Corporation paid Plaintiff the limits of the first-level policy. Defendant, has taken the position, however, that its Umbrella Policy does not provide coverage for Smiths' claims made against Plaintiff with respect to the excess amount.

Defendant's Umbrella Policy, with liability limits of $ 25,000,000 and no self-insured retention, provides that it will pay on behalf of the insured those sums in excess of the underlying policy that the insured becomes legally obligated to pay by reason of liability imposed by law because of bodily injury that takes place during the policy period and is caused by an occurrence. Moreover, the Umbrella Policy specifically states that Liberty Insurance Corporation's first-level policy with Plaintiff is the underlying policy.

Two provisions of Defendant's Umbrella Policy, Exclusion A and Exclusion Q, are at issue here. Exclusion A provides as follows: this insurance does not apply to: A. " '[b]odily injury' or 'property damage' expected or intended from the standpoint of the '[i]nsured.'" The parties do not dispute that under Exclusion A, there is no coverage for substantial certainty intentional torts. Exclusion Q states in pertinent part as follows:

> This insurance does not apply to . . . Q. The following items 1 through 4, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such

2

>policy:
>
>1. Liability of any employee with respect to 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' or to you or another employee of the same employer insured in the course of such employment. . . .
>
>4. 'Bodily injury' to: a. an employee of any 'insured' arising out of and in the course of: i. employment by any 'insured;' or  ii. performing duties relating to the conduct of any 'insured's' business. . . .

After Defendant denied coverage under the Umbrella Policy to Plaintiff in the Smiths' action, Plaintiff filed the instant Complaint (Doc. # 2).   Plaintiff seeks a declaratory judgment requesting that this Court declare that under Ohio law that Defendant is obligated pursuant to its Umbrella Policy to provide coverage to Plaintiff for the excess amount awarded in the Smiths' action.  This requested coverage includes indemnification for the portion of the Smiths' settlement not previously paid pursuant to the underlying policy plus Plaintiff's costs incurred in defense of the Smiths' action.  Plaintiff also seeks damages as the result of Defendant's alleged breach of its contractual obligations in an amount in excess of $ 75,000.   Plaintiff now moves for partial summary judgment with respect to its desired declaratory relief.  The motions have been fully briefed and are ready for disposition.

## B.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its

motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Fed. R. Civ. P. 56(e). It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if Plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case.  See *Muncie*, 328 F.3d at 873 (citing *Celotex Corp.,* 477 U.S. at 324.)  However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### C.  Discussion

Plaintiff argues that the terms of Defendant's Umbrella Policy are directly in conflict.  Specifically, Plaintiff contends that Exclusion A purportedly excludes the substantial certainty employer intentional tort coverage that is provided in the underlying policy.  Plaintiff does not dispute that solely under Exclusion A, there is no coverage for substantial certainty employer intentional torts.  Notwithstanding Exclusion A, Plaintiff argues that Exclusion Q provides substantial certainty employer intentional tort coverage.  Thus, Plaintiff claims that Exclusion Q is not only an exclusion.  Rather, Plaintiff argues that Exclusion Q is also a grant of follow-form coverage with respect to employer's liability coverage.  Plaintiff references Exclusion Q's plain language purporting to adopt the same coverage as the underlying policy.[1]  Plaintiff also cites to the deposition of John Trees ("Trees"), a Claims Specialist for Defendant who made the coverage determinations on Defendant's behalf, to support its claim that but for Exclusion A, Exclusion Q provides coverage for substantial certainty intentional torts.  Plaintiff

---

[1]   The parties do not dispute that the provisions of the underlying policy provided coverage for substantially certain intentional torts.

5

acknowledges that Defendant's Umbrella Policy contains a qualifier that the policyholder should read the entire policy carefully to determine his or her rights, duties, and what is covered. Plaintiff emphasizes, however, that the Umbrella Policy, specifically Exclusion Q, lacks any qualifications such as that it provides the same coverage as under the first-level policy "except as" otherwise excluded.  Thus, according to Plaintiff, Exclusion A and Exclusion Q are in direct conflict.  Plaintiff posits that this Court should resolve the ambiguity by construing the Umbrella Policy against Defendant and in favor of Plaintiff, the insured.  Moreover, Plaintiff argues that solely with respect to employer's liability coverage, Exclusion Q would be illusory if this Court interprets the policy to deny coverage.

Conversely, Defendant argues that based on the plain meaning of the Umbrella Policy, it does not have a duty to defend or indemnify Plaintiff as to Smiths' substantial certainty intentional tort excess claim.  It contends that there is no conflict between Exclusion Q and Exclusion A.  Rather, Defendant posits that both provisions are, in effect, exclusions just as they are labeled.  According to Defendant, these exclusions operate independently.  Defendant claims its interpretation adheres to the plain meaning of the policy which is unambiguous.  Specifically, Defendant argues that Exclusion Q in no ways affects Exclusion A and that these exclusions may be interpreted as follows: Exclusion Q precludes coverage for all employee claims, unless an underlying policy cover such claims.  In that case, Defendant alleges that Exclusion Q does not apply and employee claims are covered unless they fall within another exclusion.  Defendant claims therefore that Exclusion Q and A, when read together, clearly deny coverage for claims alleging substantial certainty intentional torts.  Thus, Defendant further states that it would inappropriate for this Court to construe the contract in favor of the insured.  This Court finds

Plaintiff's arguments more convincing.

Under Ohio law, there are two types of intentional torts: a "direct intent" tort and a "substantial certainty" tort. *Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 175, 551 N.E.2d 962, 964 (Ohio 1990); *see also Berlekamp Plastics, Inc. v. Buckeye Union Ins. Co.,* 124 Ohio App. 3d 92, 94, 705 N.E.2d 696, 698-99 (Ohio App. 6 Dist.,1997). A direct intent tort–such as a battery– is when "the actor does something which brings about the exact result desired." *Harasyn*, 49 Ohio St.3d at 175, 551 N.E.2d at 964. A "substantial certainty" intent tort in when the "actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result." *Id.*

The majority of cases alleging an employer intentional tort involve substantial certainty torts. *Id.* Under the facts of the present case, to establish intent for the purpose of proving a substantial certainty intentional tort, the employee must demonstrate:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.[2]

---

[2] Effective April 7, 2005, the Ohio legislature enacted Ohio Rev. Code § 2745 .01, governing an employer's liability for intentional tort, in another attempt "to supersede the effect of the Ohio Supreme Court decisions" in various cases regarding common law employer intentional tort claims, including *Fyffe*. Section 2745.01 now provides that in an action for intentional tort, an employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." Section 2745.01(B) defines "substantial certainty" to mean "that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." Because the accident at issue occurred prior to the enactment of the statute, this case is governed by the standard set forth in *Fyffe*. *See also Estate of Merrell v. M. Weingold & Co.,* No. 88508, 2007 WL 1776357, *4 (Ohio App. 8 Dist. Jun 21, 2007).

7

*Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus (Ohio 1991).

Once intent is established, the employer is treated by the law as if it had desired to produce the result. Thus, intent is inferred from "substantial certainty" of injury. *Harasyn,* 49 Ohio St.3d at 176, 551 N.E.2d at 965.

With respect to public policy, the Ohio Supreme Court distinguishes between direct intent and substantial certainty intentional torts. *Harasyn*, 49 Ohio St.3d at 175-177, 551 N.E.2d at 964-66. The Ohio Supreme Court has determined that it is not against Ohio public policy to provide insurance coverage for substantial certainty intent torts. *Id.* (holding that public policy does not prohibit employer from insuring against tort claims by employees in cases where employer did not intend to injure employee but knew that injury was substantially certain to occur); *see also Lumbermens Mut. Cas. Co. v. S-W Industries, Inc*., 39 F.3d 1324, 1328-29 (6th Cir. 1994) (holding that Ohio public policy did not preclude insured from seeking indemnification from insurers for compensatory damages awarded for intentional tort arising not from direct intent to harm, but from proceeding in face of risk that harm was substantially certain to occur).

In the present case, the parties do not dispute that solely with respect to Exclusion A, there is no coverage for substantial certainty intentional torts. Exclusion A provides as follows: this insurance does not apply to: A. " '[b]odily injury' or 'property damage' *expected or intended* from the standpoint of the '[i]nsured.'"(emphasis added). Indeed, it is well-established under

Ohio law that there is no coverage for substantial certainty intentional torts where an insurance policy excludes coverage for bodily injury "expected or intended" from the standpoint of the insured. *Penn Traffic Co. v. AIU Ins. Co.,* 99 Ohio St.3d 227, 790 N.E.2d 1199 (Ohio 2003); *see Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St.3d 189, 190, 569 N.E.2d 906, 907 (Ohio 1991) (stating that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."); *see also Simpson v. Intermet Corp*., 213 Fed. App'x. 390, 393 (6th Cir. 2007).

Instead, Defendant argues that Plaintiff takes an "untenable position" that Exclusion Q actually creates coverage. This Court recognizes that policy exclusions do not create coverage, they narrow it. *Fidelity and Casualty Co. of New York v. Seven Provinces Ins. Co.*, 345 F. 2d 227 (6th Cir. 1965); *see also Ohio Valley Livestock Corp. v. Val Decker Packing Co.,* Case No. 81 CA 63, 1982 WL 3763, *6 (Ohio App. 2 Dist. July 21, 1982) (stating that "[a]n exclusionary clause is for the purpose of delimiting and restricting policy coverage."). The statement of law presumes however that the plain language of the exclusion actually excludes. Here, Exclusion Q in Defendant's Umbrella Policy is deceivingly labeled as an exclusion in light of the language contained therein. Exclusion Q is an exclusion to the extent that it precludes "coverage for all employee claims." That exclusion, however, is followed by an inclusive qualifier that states "unless an underlying policy cover such claims." Thus, this Court finds that Exclusion Q contains a follow-form provision that defines the scope of employer's liability coverage afforded in the Umbrella Policy. Namely, it affords the same coverage as the underlying first-level employer's liability policy.

Moreover, this Court notes that the Umbrella Policy has several other provisions labeled

as policy exclusions that contain identical language as Exclusion Q to adopt coverage provided by the underlying policy.  Importantly, Defendant acknowledges that these policy exclusions are follow-form provisions.  (Doc. # 27, Ex 2.)

Defendant acknowledges the following three endorsements as granting follow-form coverage:

> The aircraft liability endorsement excludes coverage for "[a]ny liability for or arising out of the ownership, maintenance, operation, use, "loading," or "unloading" of any aircraft, *except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.*

*Id.* (emphasis added).

> The auto liability endorsement excludes coverage for "[a]ny liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," *except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.*

*Id.* (emphasis added).

> The employee benefit liability endorsement excludes coverage for "[a]ny actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, *except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.*

*Id.* (emphasis added).

Moreover, Defendant implicitly concedes that Exclusion Q also contains a follow-form provision.  Defendant states that "Exclusion Q precludes coverage for all employee claims, unless an underlying policy covers such claims." (Doc. # 33.)   Finally, Tree's deposition bolsters this court's interpretation.  (Doc. # 28.)  Specifically, Trees testified that there would be coverage under Defendant's Umbrella Policy but for Exclusion A.  (*Id.* at 28-29.)  This Court

finds therefore that Exclusion Q is, in fact, a grant of follow-form coverage for employer's liability claims to the extent of the underlying policy.

The plain language of Exclusion Q does not explicitly or implicitly support Defendant's interpretation that Exclusion Q should be read as providing follow-form coverage with the underlying policy, but for any exclusion elsewhere.  Defendant's interpretation cannot be reasonably inferred from the Umbrella Policy's provision that the policyholder should read the entire policy carefully to determine his or her rights, duties, and what is covered.  Importantly, Exclusion Q does not include, as Defendant's interpretation suggests, a qualification that the Umbrella Policy provides the same coverage as under the first-level policy "except as" otherwise excluded.

This Court finds that Exclusion Q purports to grant coverage for substantial certainty torts,  while Exclusion A purports to deny coverage for them.  Thus, with respect solely to substantial certainty intentional tort claims, these provisions directly conflict.  They therefore give rise to an ambiguity in the insurance contract.

Under Ohio law, when an ambiguity exists in an insurance contract, the Court must construe the ambiguous terms in favor of the insured.  *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 342, 513 N.E.2d 733, 736 (Ohio 1987) (recognizing that "it is beyond question that any ambiguity will be resolved in favor of the insured and against the insurer"); *see also Talbert v. Continental Cas. Co.,* 157 Ohio App.3d 469, 473, 811 N.E.2d 1169, 1172 (Ohio App. 2 Dist. 2004) (stating that "when an ambiguity exists, the contract's ambiguous terms must be strictly construed against the insurer and liberally in favor of the policyholder "); *Snedegar v. Midwestern Indemn. Co.* 64 Ohio App.3d 600, *604, 582 N.E.2d 617, 620 (Ohio App. 10

Dist.1989) (noting that "language used for exceptions or exclusions in insurance policies is strictly construed in favor of the insured, and coverage against the insurer").

Here, under Ohio law, the Court must resolve the inherent conflict between Exclusion Q and Exclusion A in favor of coverage. This Court holds that Defendant is obligated under its Umbrella Policy to provide coverage to Plaintiff for the substantial certainty intentional tort claim made in the Smiths' action.[3]

### D.  Conclusion

For the reasons aforementioned, this Court **GRANTS** Plaintiff's motion for partial summary judgment (Doc. # 30) and **DENIES** Defendant's motion.  (Doc. # 31.)

**This Court schedules a telephone status conference for August 27, 2007 at 3:30 p.m.** to establish a scheduling order with respect to any remaining matters.  Counsel for Plaintiff shall initiate the call.

**IT IS SO ORDERED**.

                                                              s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[3] In light of this Court's finding, whether Defendant's interpretation of Umbrella Policy renders coverage for substantial certainty intentional torts illusory, is moot.