**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GENERAL MILLS INC.,**

**Plaintiff,**

**v.**

**LIBERTY INSURANCE UNDERWRITERS INC.,**

**Defendant.**

**Case No. 2:06-cv-315**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

**OPINION AND ORDER**

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 41) and **GRANTS** Defendant's Motion for Summary Judgment (Doc. # 42).

## I. BACKGROUND

Plaintiff is a corporation engaged in the business of manufacturing and marketing food products throughout the world. It owns and operates a manufacturing facility in Wellston, Ohio. Defendant is engaged in the business of selling insurance policies and is licensed to transact insurance business in the state of Ohio.

For workers' compensation/employer liability insurance, Plaintiff elected to self-insure the first $1 million for both the defense of claims costs and for the indemnity of claims costs, to purchase insurance for the next $2 million ("First-Level Policy"), and to purchase a $25 million Umbrella Policy from Defendant.

This action arose out of a severe bodily injury to Plaintiff's employee, Anthony Smith, at

its Wellston, Ohio plant. Smith and his family sued Plaintiff alleging a substantial certainty intentional tort. Following discovery, Plaintiff settled the Smiths' claims for an amount in excess of its First-Level Policy. Plaintiff claimed this excess amount under the Umbrella Policy.

Defendant, however, took the position that its Umbrella Policy did not provide coverage for the Smiths' claims. Consequently, Plaintiff filed this action seeking a declaratory judgment that under Ohio law Defendant was obligated pursuant to its Umbrella Policy to provide coverage to Plaintiff for the excess amount awarded in the Smiths' action. Two provisions of the Umbrella Policy, Exclusion A and Exclusion Q, were at issue. Exclusion A excluded coverage for substantial certainty intentional torts. Exclusion Q, however, states in pertinent part as follows:

> This insurance does not apply to . . . Q. The following items 1 through 4, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

(Doc. # 36 at 2-3.) This Court concluded that:

> Exclusion Q contains a follow-form provision that defines the scope of employer's liability coverage afforded in the Umbrella Policy. Namely, it affords the same coverage as the underlying first-level employer's liability policy. . . . . . .
>
> Exclusion Q purports to grant coverage for substantial certainty torts, while Exclusion A purports to deny coverage for them. Thus, with respect solely to substantial certainty intentional tort claims, these provisions directly conflict. They therefore give rise to an ambiguity in the insurance contract. Under Ohio law, when an ambiguity exists in an insurance contract, the Court must construe the ambiguous terms in favor of the insured.

*Id.* (citations omitted). Accordingly, this Court granted summary judgment in favor of Plaintiff.

The parties now have filed the current motions disputing which party is responsible for a certain portion of the attorneys' fees incurred in association with the Smiths' claims.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Fed. R. Civ. P. 56(e). It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234-35 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if the party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to its case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp.*, 477 U.S. at 324). However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

**III. ANALYSIS**

The parties dispute whether Defendant has a duty to reimburse Plaintiff for defense costs incurred in connection with the Smiths' claims. The contract provisions at issue in the Umbrella Policy are Exclusion Q and the Defense Provision and the contract provision at issue in the First-Level Policy is its defense provision, titled Claim Expenses, which provides in pertinent part:

> PART 5 – CLAIM EXPENSES
>
> A. Claim expense means your litigation cost, interest required by law on awards or judgments, and your claim investigation or legal expense which can be directly allocated to a specific claim. . . .
>
> B. We will indemnify you for a portion of the claim expenses you pay. The portion we will indemnify will equal the percentage of the claim expense determined by the ratio of loss paid by us to the total amount of the loss (up to the applicable limit of indemnity). . . .

(Doc. # 27, Ex. 1). This provision provides first-dollar coverage above Plaintiff's $1 million dollar self-insured retention. In contrast, the Defense Provision in the Umbrella Policy requires exhaustion of the First-Level Policy before it provides any coverage:

> III. DEFENSE
>
> A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:
>
> 1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies . . . .

*Id.*, Ex. 2.

Defendant argues that the issue before this Court is whether the First-Level Defense Provision or the defense provision in the Umbrella Policy applies. Defendant contends that the Umbrella Policy is governed by its own terms and conditions. (Doc. # 42 at 3.) Accordingly, Defendant concludes, that it does not owe defense expenses under the Umbrella Policy since the costs at issue here were incurred before exhaustion of the underlying limits.

Plaintiff, however, frames the issue as follows:

> Whether the follow-form provision in Exclusion Q of the [Umbrella P]olicy incorporates the First-Level Policy's coverage for defense costs incurred in connection with the Smith claims.

(Doc. # 41 at 8.) Plaintiff argues that this Court's previous Opinion and Order in this action and Ohio law regarding ambiguous language on coverage in insurance policies requires the conclusion that the follow-form provision in Exclusion Q incorporates the defense provision (Claim Expenses) from the First-Level Policy into the Umbrella Policy, thereby requiring the Umbrella Policy to provide first-dollar coverage above Plaintiff's self-insured retention of $1

million to defense costs. This Court disagrees.

First, Plaintiff argues that this Court' previous Opinion and Order dictates that the follow-form language in Exclusion Q incorporated the First-Level Policy's Defense Provision into the Umbrella Policy–the same way that this Court previously found the follow-form language incorporated coverage for intentional torts from the First-Level Policy into the Umbrella Policy. In that Opinion and Order, this Court reasoned that, Exclusion Q (which states that the Umbrella Policy covers employee claims if an underlying policy does) conflicts with Exclusion A (which excludes employee intentional tort claims), such that Exclusion A was a nullity.

However, Exclusion Q relates to the coverage of employee claims in the first instance–not to defense costs. This Court specified that "Exclusion Q contains a follow-form provision that defines the scope of employer's liability coverage afforded in the Umbrella Policy. Namely, it affords the same coverage as the underlying First-Level employer's liability policy." There is no similar "following form" provision as to defense costs. Indeed, if the First-Level Policy had covered intentional torts without reference to Exclusion Q, there would be no dispute that the coverage was excess and that Defendant did not owe defense expenses until the underlying claim insurance had been exhausted.

Second, there is no internal conflict in the Umbrella Policy as to defense expenses as the Court previously found with respect to exclusions A and Q. (Doc. # 36 at 2-3) ("Thus, with respect solely to substantial certainty intentional tort claims, these provisions directly conflict. They therefore give rise to an ambiguity in the insurance contract.") Plaintiff argues that, because of the incorporation of the First-Level Policy's Claim Expenses Provision, *both* the

Umbrella Policy's Defense Provision (under which Defendant has no defense obligation) and the First-Level Policy's Claim Expenses Provision (under which Defendant has a defense obligation) are part of the Umbrella Policy, which creates a conflict like the conflict between Exclusion A and Exclusion Q, *i.e.*, one creates coverage and the other prohibits coverage. Plaintiff, however, is mistaken. Here, both of the provisions at issue create coverage for defense expenses. The issue is the timing of the payment of the defense expenses. But, the two provisions do not conflict and can comfortably coexist. Thus, there is simply no internal conflict as to defense obligations.

Third, because there is no internal conflict, there is no ambiguity in the insurance contract and therefore, no need to construe the contract in favor of coverage. *See Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 342 (Ohio 1987) (recognizing that "it is beyond question that any ambiguity will be resolved in favor of the insured and against the insurer").

Last, this conclusion is entirely consistent with the fundamental nature of an excess or umbrella policy, which is not triggered until the primary insurance is exhausted. In a case that is persuasive, our sister circuit recognized the "residual nature" of a following-form umbrella policy provision. *See Occidental Fire & Cas. Co. of N. Car. v. Brocious*, 772 F.2d 47 (3d Cir. 1985). The *Brocious* court held that the umbrella carrier did not have to contribute to a settlement before the underlying policies were exhausted, noting that a contrary conclusion would "negate the umbrella character" of the policy. *Id.* at 54 (citing as an example *Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1283-84 (5th Cir. 1971), which "describ[ed] the umbrella policy's coverage as 'unique' "). This Court agrees with that reasoning and is persuaded to conclude the same here.

Accordingly, since the costs at issue here were incurred before exhaustion of the underlying policy limits Defendant does not owe defense expenses under the Umbrella Policy .

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 41) and **GRANTS** Defendant's Motion for Summary Judgment (Doc. # 42). The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in this matter.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**